IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No.: 08-CR-00184 JDB |
| ) | |
| v. ) | UNITED STATES' MOTION |
| ) | FOR DOWNWARD DEPARTURE |
| CATHAY PACIFIC AIRWAYS LIMITED, ) | PURSUANT TO U.S.S.G. §8C4.1(b) |
| ) | AND 18 U.S.C. § 3553(a)(6) |
| Defendant. ) | |
| ) | Date/Time: July 22, 2008 at 9:45 a.m. |

The United States hereby moves for a downward departure from the United States Sentencing Guidelines ("U.S.S.G.") fine range calculated in the above-captioned matter due to Cathay Pacific Airways Limited's substantial assistance in the continuing investigation of Sherman Act violations by other companies and individuals and to prevent an unwarranted sentencing disparity under 18 U.S.C. § 3553(a)(6).

### I.  U.S.S.G. §8C4.1(b)

The United States respectfully submits that the following factors enumerated in U.S.S.G. §8C4.1(b) warrant downward departure:

**A.   Nature and Extent of Assistance**

U.S.S.G. §8C4.1(b)(2) lists as a relevant factor the nature and extent of the organization's assistance. Since it has begun cooperating, Cathay Pacific Airways Limited ("Cathay") has produced tens of thousands of pages of documents, including foreign-located documents, and the company has committed to making additional foreign-located documents available upon request by the United States.

1

Cathay also obtained separate counsel for certain key executives and facilitated making executives available for interviews, at company expense, in the United States. As a result, the United States was able to interview several executives who would have been beyond the subpoena power of the grand jury. Cathay has also identified other employees who may have information useful to the ongoing investigation and has agreed to make them available upon request in the United States.

Cathay is committed to continuing its cooperation by, among other things, providing U.S. and foreign-located documents and making its executives available to come to the United States to be interviewed, testify before the grand jury, or at any trial that may result from the investigation.

In sum, Cathay has provided excellent cooperation and is obligated by the terms of its plea to continue to provide that cooperation in the future.

**B.    Timeliness**

U.S.S.G. §8C4.1(b)(3) lists as a relevant factor the timeliness of the organization's assistance. In this case, Cathay was among the first ten companies to begin cooperating fully with the United States' investigation, and its cooperation began shortly after it had conducted its own internal investigation of the subject conduct and concluded it had engaged in illegal conduct.

**C.    Government's Evaluation of the Assistance**

U.S.S.G. §8C4.1(b)(1) lists as a relevant factor the United States' evaluation of the assistance rendered by the organization. In this case, the United States believes that Cathay has provided full and substantial cooperation which has been of significant and useful assistance to its ongoing investigation. In particular, Cathay's cooperation has provided the United States with

timely, credible information and documentation against numerous corporate and individual co-conspirators which advanced the investigation of conspiratorial conduct in Hong Kong that substantially and directly affected the United States and which should permit the United States to bring additional prosecutions in the future. The information provided by Cathay has allowed the United States to expand the scope of its cargo investigation and has already assisted in obtaining the cooperation of additional corporate co-conspirators.

International conspiracies which are formed and carried out by conspirators located in various countries are difficult to prove absent the testimony of co-conspirators who are willing to submit to the jurisdiction of the United States. As a foreign corporation with headquarters outside the United States, Cathay could have retained highly relevant documents in its Hong Kong offices and refused to cooperate and obtain the cooperation of its executives in this investigation. It chose, however, to assist the United States in its investigation in an important and useful way.

In the opinion of the United States, the cooperation tendered and promised by Cathay merits a downward departure as contemplated by §8C4.1.

## II.  18 U.S.C. § 3553(a)(6)

Under 18 U.S.C. § 3553(a)(6), when imposing a sentence, the Court is to consider whether the sentence will result in any "unwarranted sentence disparities" among defendants. The conduct to which Cathay has agreed to plead guilty raises the potential for a sentencing anomaly that this Court should consider in determining the reasonableness of the requested downward departure and recommended fine.

All carriers that have been sentenced to date in connection with this investigation were

charged with, and pleaded guilty to, engaging in conspiratorial activity both in the United States and abroad, thereby affecting both their U.S.-outbound and U.S.-inbound cargo shipments.[1] To resolve a dispute with those carriers regarding whether U.S.-inbound revenue is appropriately included in the Guidelines analysis used to calculate their fines, the United States agreed to: (1) use only U.S.-outbound revenue to calculate each carrier's Guidelines fine range and (2) then to make an upward adjustment within the fine range based on each carrier's volume of U.S.-inbound revenue due to the fact that basing the fine only on U.S.-outbound revenues understates the harm from the conspiracy. Each carrier then received a cooperation discount that was applied from the point of the upward adjustment within the fine range. The practical effect of this compromise was to dilute the effect that U.S.-inbound revenue had on the Guidelines calculation and resulting fine.

Cathay has advanced the same arguments as other carriers regarding whether U.S.-inbound revenue is appropriately included in its fine calculation, and it would benefit significantly from the fine methodology used for other carriers because, like most carriers, its U.S.-inbound revenue is considerably higher than its U.S.-outbound revenue. Thus, a Guidelines fine calculation based on Cathay's U.S.-outbound revenue would produce a lower fine range than a fine calculation based on its U.S.-inbound revenue.

However, because the conspiratorial conduct with which Cathay is charged was limited to Hong Kong, it did not affect Cathay's U.S.-outbound revenue. Accordingly, Cathay's Guidelines

---

[1] The carriers that have pleaded guilty and been sentenced to date for such conduct are British Airways, Korean Air, Qantas Airways, and Japan Airlines International Co. Air France-KLM, Martinair Holland, N.V., and SAS Cargo Group have been charged in related cases and have agreed to plead guilty to similar conduct but have not yet been sentenced.

fine calculation is not appropriately based on its U.S.-outbound revenue, as was the case with other carriers. Instead, Cathay's Guidelines fine calculation is appropriately based on its U.S.-inbound revenue, which was affected by Cathay's conspiratorial conduct in Hong Kong. Given that Cathay's U.S.-inbound revenue was much higher than its U.S.-outbound revenue, the resulting fine range is much higher than one based on its U.S.-outbound revenue would be.

Because the United States agreed[2] to base the Guidelines fine range calculations on U.S.-outbound revenue for carriers that conspired both in the United States and abroad,[3] Cathay faces the anomalous prospect of paying a higher fine for conspiring only in Hong Kong than it would have for conspiring in both Hong Kong and the United States. The United States believes such a result would be inequitable given Cathay's early cooperation, which has been comparable to a number of the carriers to be sentenced at the same time as Cathay. As a result, the United States submits that Cathay should receive a cooperation discount and downward departure that results in its fine being no higher than it would have been had Cathay's fine been calculated pursuant to the methodology used to calculate all other corporate fines to date in this investigation. In this way, any unwarranted disparity will be eliminated between Cathay's fine, based on U.S.-inbound revenue, and those of other corporate defendants, whose fines were based primarily on U.S.-outbound revenue. The recommended fine of $60 million is equivalent to the fine that Cathay

---

[2] This agreement by the United States extended only to carriers that acknowledged that they violated the U.S. antitrust laws and cooperated with the ongoing investigation. The United States reserves the right to seek fines against non-cooperating companies based on both U.S.-inbound and U.S.-outbound revenues.

[3] This results in a lower fine for those carriers even though they each received an upward adjustment within the fine range to take into account the effect on U.S.-inbound revenue from their conspiratorial conduct.

would receive had its fine been based on its U.S.-outbound revenue and calculated in the same manner as all other corporate defendants in this investigation to date.

As set forth in the parties' Plea Agreement, a copy of which has been provided to the Court, the U.S.S.G. sentencing calculation based on Cathay's U.S.-inbound revenue results in a fine range of $98.9 million to $197.8 million. Thus, the United States recommends and respectfully requests that Cathay receive a 39% downward departure from the bottom of the Guidelines fine range[4] and a resulting fine of $60 million.

DATED: July 10, 2008

Respectfully submitted,

BY:  /s/ Brent Snyder
Mark Rosman, Assistant Chief
Brent Snyder, Trial Attorney
Mark Grundvig, Trial Attorney
Kathryn Hellings, Trial Attorney
Elizabeth Aloi, Trial Attorney
Carsten Reichel, Trial Attorney
U.S. Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 11300
Washington, D.C. 20530
Tel.: (202) 616-3186
Fax: (202) 514-6525

---

[4] The 39% downward departure recommended for Cathay is the equivalent of a 20% cooperation discount under the methodology used to calculate other corporate defendants' fines. That is the case because the Guidelines fine range based on Cathay's U.S.-outbound revenue is much lower and requires a much smaller discount to result in a $60 million fine.

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July 2008, the foregoing United States' Motion for Downward Departure Pursuant to U.S.S.G. §8C4.1(b) and 18 U.S.C. § 3553(a)(6) was filed electronically and to the best of my knowledge, information and belief, counsel for defendant Cathay Pacific Airways Limited will be notified through the Electronic Case Filing System.

DATED:    July 10, 2008 at Washington, D.C.

                                                    /s/
                                       Brent Snyder